FILED

2017 Feb-27  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BRANDON ROBERTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:16-cv-00312-AKK** |
| **CAROLYN W. COLVIN, ACTING** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Brandon Roberts brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that her decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I.     PROCEDURAL HISTORY

Roberts filed an application for Title II child's disability insurance benefits on October 20, 2008, alleging a disability onset date of May 12, 1985 due to vision problems and asthma. (R. 196). The SSA determined Roberts to be disabled beginning January 1, 2006, and awarded him benefits. (R. 83). On May 14, 2013,

the SSA conducted a continuing disability review, and determined that Roberts was no longer disabled.  (R. 84–90, 98–103).  Roberts requested reconsideration, but the SSA again found that Roberts was "not disabled."  (R. 104–09, 142).  Roberts subsequently requested a hearing before an administrative law judge ("ALJ"), (R. 145), who also denied Roberts's claim, (R. 15–26).  The Appeals Council denied review, (R. 1–7), rendering the ALJ's opinion the final decision of the Commissioner.  Roberts then filed this action pursuant to § 405(g).  (Doc. 1.).

## II.    STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.   STATUTORY AND REGULATORY FRAMEWORK

42 U.S.C. § 432(f) governs the termination of benefits, and provides that a recipient of benefits

> may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by —
>
> > (1) substantial evidence which demonstrates that —
> >
> > > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> > >
> > > (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).[1]

The SSA uses an eight-step sequential analysis in determining whether to terminate disability benefits. *See* 20 C.F.R. § 404.1594(f). Relevant here, the inquiry involves ascertaining, among other things, (1) whether there has been medical improvement, as defined in 20 C.F.R. § 404.1594(b)(1), and (2) whether the "medical improvement . . . is related to [the claimant's] ability to do work . . . i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination." § 404.1594(f)(4). Assuming the "medical improvement is shown to be related to [the claimant's] ability to do work or if one of the . . . exceptions to medical improvement applies," the SSA will ascertain whether the claimant's "current impairments in combination are severe." § 404.1594(f)(6). If the answer is yes, the SSA will "assess [the claimant's] current ability to do substantial gainful activity in accordance with § 404.1560." § 404.1594(f)(7). A claimant is no longer disabled if the SSA determines that he can

---

[1] "Medical improvement" is

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

20 C.F.R. § 404.1594(b)(1). Medical improvement is sufficient to support a termination of benefits only if the medical improvement results in an increase in the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1594(b)(3).

still do his past work.  *Id.*  However, if the claimant is unable to do his past work, then the SSA will ascertain whether he can do other work "[g]iven the residual functional capacity assessment and considering [the claimant's] age, education, and past work experience . . . ."  § 404.1594(f)(8).

## IV.    The ALJ's Decision

The ALJ noted that, as of March 29, 2006 (the date of the most recent favorable medical decision, *i.e.*, the "comparison point decision" or "CPD"), Roberts had the following medically determinable impairments:  congenital nystagmus, ocular albinism, and borderline intellectual functioning.  (R. 20). These impairments resulted in a non-exertional residual functional capacity with the following additional limitations:

> limited far acuity, limited depth perception, limited visual accommodation, limited color vision, limited field of vision, must avoid all exposure to hazards (including machinery, heights, etc.), no commercial driving, capable of understanding and remembering simple instructions, capable of performing simple tasks over an eight-hour work day with routine breaks, capable of interacting appropriately with coworkers, supervisors, and the general public, and changes in the work place should be introduced slowly.

(*Id.*).  Roberts did not develop additional impairments from the date of the CPD through May 1, 2013, and did not engage in substantial gainful activity during that period.  (*Id.*) (citing 20 C.F.R. § 404.1594(f)(1)).

The ALJ found medical improvement as of May 1, 2013, and concluded that Roberts no longer had an impairment or combination of impairments that met or

5

medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526), because the medical improvement increased Roberts's residual functional capacity and, thus, Roberts's ability to work. (*Id.*). Specifically, as of May 1, 2013, Roberts had a non-exertional residual functional capacity with the following additional limitations:

> no climbing of ladders, ropes and scaffolds; no exposure to unprotected heights or dangerous machinery; no commercial driving; no reading very small print (such as telephone book size print); no work with very small objects (such as beads or threads); can understand, remember and carry out simple instructions; limited to jobs involving infrequent and well-explained workplace changes; and can concentrate and remain on tasks for two hours at a time (sufficient to complete an eight-hour workday).

(R. 21). Based on this residual functional capacity and the medical improvement, the ALJ found that Roberts could perform his past relevant work as a cart attendant. (R. 25). Accordingly, the ALJ concluded that Roberts's disability ended as of May 1, 2013. (R. 26).

## V.   ANALYSIS

Roberts takes issue with the Commissioner's finding that he is no longer disabled. According to Roberts, the finding is flawed because the ALJ purportedly failed to (1) properly evaluate the opinions of the consulting physicians and (2) pose a complete hypothetical to the vocational expert. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

**A. The ALJ properly evaluated the opinions of the consultative examiners and the medical record.**

Roberts's primary argument of alleged error is that the ALJ improperly focused on his improved "visual acuity," rather than the permanency of his underlying visual conditions, in finding medical improvement in Roberts's impairments.  (Doc. 9 at 6).  As a secondary argument, Roberts contends that the ALJ failed to afford proper weight to the consultative examiners' opinions.  (*Id.* at 7).  The court will address these arguments in turn.

To support his contention that the ALJ erred by finding medical improvement, Roberts points out initially that in March 2006, Dr. Frank Gillis determined that Roberts "would have difficulty being able to accomplish most job requirements secondary to the visual deficits he has."  (R. 320).  Next, Roberts adds that Dr. Steve Sullins determined in May 2013 — *i.e.*, as part of the SSA's reevaluation of Roberts's claim — that Roberts "had ocular albinism and congenital nystagmus with restricted eye muscle function," (R. 349), "did not have useful binocular vision in all directions for distance or near vision and . . . did not have depth perception . . .," (R. 349–51), and that these conditions were "permanent." (R. 350).  In essence, Roberts claims that Dr. Sullins's opinion mirrors that of Dr. Gillis and refutes any contention that Roberts's condition has improved.    Roberts overlooks, however, that Dr. Sullins also reported improvement in Roberts's corrected vision.  Specifically, at the time of the 2006

7

comparison point decision, Roberts had corrected bilateral far and near vision of 20/70 and 20/40, respectively. (R. 21, 319). However, when Dr. Sullins examined Roberts in 2013, Roberts's corrected bilateral far and near vision had both increased to 20/30. (R. 21, 349). This finding supports the ALJ's conclusion of medical improvement.

Despite the improved vision, Roberts contends that the proper inquiry is "not whether [his] visual acuity has improved," but whether his "vision has improved." (Doc. 9 at 6) (emphasis omitted). Roberts's contention is unavailing because, as the Commissioner states, a determination of "a decrease in medical severity [is] based on changes (improvement) in the *symptoms*, signs and/or laboratory findings associated with [the claimant's] impairment(s)." (Doc. 10 at 5–6 (citing 20 C.F.R. §§ 416.994(b)(1)(i), (2)(i))) (emphasis added). Indeed, the ALJ can, in fact, evaluate the improvement in symptoms because the purpose of a continuing disability review is to discern any decrease in the severity of a claimant's symptoms that may increase his ability to work. *See* 20 C.F.R. §§ 416.994(b)(1)(iii), (2)(ii). *See also Chereza v. Comm'r of SSA*, 379 F. App'x 934, 940–41 (11th Cir. 2010) (substantial evidence supported ALJ's finding of medical improvement in claimant's depression and anxiety, and cessation of disability benefits, when a more recent evaluation showed those conditions were "controlled by medications"); *Edmundson v. Astrue*, No. 8:10-cv-675-T-26TBM, 2011 U.S.

Dist. LEXIS 98660, at *20 (M.D. Fla. Aug. 10, 2011), adopted by 2011 U.S. Dist. LEXIS 98659 (M.D. Fla. Sept. 1, 2011) ("[T]he record adequately supports the ALJ's finding of medical improvement in [the claimant's] disabling impairment (coloboma with visual inattentiveness and/or blindness).  While [the claimant] is correct that coloboma is a permanent impairment, . . . medical improvement is demonstrated by the . . . statement of [the claimant's] pediatric ophthalmologist . . . that [the claimant's] visual acuity is corrected with glasses . . . .").  Moreover, in addition to the documented improvement in Roberts's vision, the ALJ also factored in her determination evidence that Roberts is able to "handle all of his personal care independently, clean his room and take out the garbage," and to "read, draw and watch television," (R. 23 (citing R. 205–06)).  Finally, the ALJ considered the evidence that Roberts "has failed to follow up with his eye doctor as advised and testified that he has not gotten new prescription glasses 'in a long time' (i.e. several years) even though he had insurance coverage" and "'forgot' to wear his tinted prescription glasses to the hearing."  (R. 23).  *See also* (R. 37–41).  For all of these reasons, the court concludes that substantial evidence supported the ALJ's finding of medical improvement that increased Roberts's ability to work.

Roberts next contends that the ALJ erred by affording little weight to Dr. Gillis's 2006 opinion and failing to specify the weight she afforded to Dr. Sullins's opinion.  (Doc. 9 at 7).  These contentions fail because, first, the ALJ was not

required to give any particular deference to the opinions of these two consulting physicians. *See Meade v. Astrue*, No. 8:09-cv-02027-T-27AEP, 2010 U.S. Dist. LEXIS 139669, at *10 (M.D. Fla. Dec. 17, 2010), adopted by 2011 U.S. Dist. LEXIS 3473 (M.D. Fla. Jan. 13, 2011) (quoting *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)) ("[A] consulting physician's opinion 'deserves no special weight.'"); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to [be] able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from . . . reports of individual examinations, such as consultative examinations or brief hospitalizations."). *Cf. MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (an ALJ "must specify what weight is given to a *treating* physician's opinion and any reason for giving it no weight") (emphasis added).  Second, the ALJ explained her reasons for not giving weight to Dr. Gillis's 2006 opinion, *i.e.*, that it was not consistent with the more recent evidence (Dr. Sullins's May 2013 evaluation) which showed improvement in Roberts's ability to see.  (R. 24).  *See Polk v. Colvin*, No. 4:12-cv-1957-LSC, 2013 U.S. Dist. LEXIS 112454, at **8–10 (N.D. Ala. Aug. 9, 2013) (ALJ did not err by giving more weight to opinion of more recent examiner, when both physicians performed one-time consultative examinations).  Finally, while the ALJ did not explicitly articulate the weight she

gave to Dr. Sullins's opinion, Roberts does not explain how this purported error affected the administrative result or otherwise prejudiced him.  *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have . . . declined to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (quotation marks omitted); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [particular physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

Because the record as a whole supports a finding that Roberts's vision had improved (and therefore his residual functional capacity had increased), and in light of Roberts's failure to show how the ALJ's failure to afford particular weight to the consultative physicians' opinions was erroneous or prejudiced him, the court finds that the ALJ applied the proper legal standards and/or did not commit reversible error.

## B. The ALJ posed an adequate hypothetical question to the vocational expert.

As his final contention of error, Roberts claims that the ALJ erred by failing to "pose a complete hypothetical question to the vocational expert which include[d] all of [Roberts's] limitations."  (Doc. 9 at 7).  Allegedly, the ALJ's

question[2] failed to account for Roberts's rapid eye movement, lack of "useful binocular vision," and lack of "depth perception." (Doc. 9 at 8).[3] Roberts is indeed correct that the ALJ "must pose a hypothetical question which comprises all of a claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, "[t]he hypothetical need only include the claimant's impairments, not each and every *symptom* of the claimant." *Ingram v. Comm'r of SSA*, 496 F.3d 1253, 1270 (11th Cir. 2007) (emphasis added). The court finds no error here, because "[a] hypothetical question may be adequate where it implicitly accounts for the claimant's limitations." *Beegle v. SSA*, 482 F. App'x 483, 487 (11th Cir. 2012). While the ALJ's question did not explicitly mention Roberts's rapid eye movement, binocular vision, or depth perception, the question accounted for Roberts's limited ability to read very small print and handle very small objects,

---

[2] The question stated:

> Let's assume we have a hypothetical individual, the claimant's education, training and work experience and we'll do this for Mr. Alpha. He has no exertional limitations except would need to avoid – there'd be no climbing of ropes, ladders or scaffolds. No unprotected heights. Would need to avoid dangerous, moving, unguarded machinery. No commercial driving. No reading of telephone book size print. No work with various small objects such as beads or threads and would be limited to unskilled work where he would be limited to jobs involving infrequent and well explained work place changes. Would Mr. Alpha be able to perform any of the past relevant work?

(R. 48).

[3] Although the ALJ did not include these symptoms in the hypothetical question she posed to the vocational expert, she otherwise considered them. *See* (R. 21) ("[T]he claimant's eye muscle function remains restricted due to his impairments, he does not have useful binocular vision even with glasses and he lacks depth perception.").

and stated that Roberts could not be exposed to unprotected heights or dangerous machinery or drive a commercial vehicle.  (R. 21).  As posed, the ALJ's question at least implicitly accounted for Roberts's rapid eye movement and lack of binocular vision and depth perception.  Accordingly, the court finds that the ALJ did not ask an incomplete question.

## VI.   CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Roberts is no longer disabled and has the RFC to perform light or medium unskilled work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.    Therefore, the Commissioner's final decision is **AFFIRMED**.  The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 27th day of February, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE